IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-HC-2201-BO

FILED
SEP 16 2008
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT EDNC
BY_____ DEP CLK

| | |
|---|---|
| IAN AULDEN CAMPBELL, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ROY COOPER, III, et al., ) | |
| Respondents. ) | |

Ian Aulden Campbell, a state inmate, petitioned the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Now before the court is respondents' motion for summary judgment to which petitioner responded. On September 11, 2008, the court held a hearing on the pending motion for summary judgment. The matter is ripe for determination.

## Background

On August 27, 2002, the Wake County Grand Jury returned an indictment charging petitioner with the murder of Heather Anne Domenie. The State of North Carolina prosecuted the murder charge capitally, seeking the death penalty. Petitioner pled not guilty to the charges. He was represented by Tommy Manning and James A. Crouch.

On May 19, 2003, the jury trial began in the case of *State v. Campbell*, No, 02 CRS 071304, in the Superior Court of Wake County. On that day, the defense filed a written declaration with the court by Campbell admitting "he assaulted Heather Anne Domenie on July 25, 2002 and that his assault upon her proximately caused her death." Pet., Attach. "Declaration of Defendant and Defense Counsel Regarding Trial" ¶ 4. The declaration indicated a defense strategy claiming defendant was not guilty of first-degree murder, but rather the lesser-included offense of homicide

in violation of the North Carolina General Statutes. *Id.* ¶5. The declaration further contained Campbell's consent to pursue the defense admitting the assault and presenting evidence, including his own testimony disputing the State's contention of guilt of first-degree murder, but establishing guilt of a lesser - included offense of homicide other than first-degree murder. *Id.* ¶ 7.

At the conclusion of evidence in the first phase of the trial, the trial court instructed the jury on first-degree murder, solely on the theory of premeditation and deliberation, and on the lesser offenses of second-degree murder and voluntary manslaughter. On June 13, 2003, the jury returned a verdict finding petitioner guilty of first-degree murder. On June 16, 2003, the jury returned a verdict finding no aggravating circumstances and recommended a sentence of life imprisonment without parole. Petitioner was sentenced in accordance with the jury recommendation, life imprisonment without parole.

On May 16, 2006, the North Carolina Court of Appeals issued a published opinion finding no error. On August 17, 2006, the Supreme Court of North Carolina denied discretionary review. On appeal, petitioner was represented by Ann B. Petersen. Petitioner filed this federal habeas petition through Ann Petersen as well.

The North Carolina Court of Appeals summarized the facts from petitioner's trial as follows:

> The facts of this case are not in dispute, and we provide only those facts pertinent to resolution of the issues on appeal. Defendant killed his fiancee, Heather Domenie, on the night of 25 July 2002. Defendant had been having an affair with another woman, and he argued with Domenie about his affair on the night of her death. The fight escalated, and defendant grabbed the towel around her neck and strangled her. According to the medical examiners, Domenie died from asphyxia due to strangulation.
>
> After some time passed, defendant called the 911 emergency center, claiming

2

his fiancee had choked herself with a tea towel and was not breathing. When the first responders arrived, he told them Domenie apparently had choked while he had been on an errand to the store. Shortly thereafter, defendant called two friends, and when they arrived, he told them Domenie had choked herself with a tea towel.

Defendant continued to give this account of Domenie's death to everyone with whom he spoke about the matter, including the emergency room doctor, the police, his life insurance agent, his family, the woman with whom he was having an affair, and his attorneys.

The police arrested defendant on 16 August 2002. He was indicted for first degree murder, and the charge was prosecuted capitally.

In April 2003, defendant admitted to his attorneys that he had strangled Domenie. At the start of the trial, on 19 May 2003, defendant filed a declaration with the court admitting "he assaulted Heather Anne Domenie on July 25, 2002 and that his assault upon her proximately caused her death." The declaration indicated a defense strategy claiming defendant was not guilty of first degree murder, but rather a lesser-included homicide with a correspondingly less culpable *mens rea*:

> The Defendant consents to his trial counsel pursuing, at trial, a course of defense which admits his assault upon Heather Anne Domenie, and plans to present evidence, including testifying in his own defense, and offering other evidence which he and his trial counsel contend will dispute the State's contention that he is guilty of First Degree Murder, but which will establish that he is guilty of a lesser-included offense of homicide other than First Degree Murder.

At trial, the defendant's counsel began his opening statement by acknowledging defendant had killed Domenie. Counsel then laid out the central issue in the case, claiming defendant did not kill Domenie "with malice or premeditation or deliberation" as the State contended, but instead had killed her "as a situational crime" without planning in advance. The defense theory of the case argued the killing "was a situational crime which resulted from a domestic situation which Ian had created, and that, as it evolved, it happened so swiftly and with such unexpected and explosive suddenness that all of his reason was suspended when he killed her." According to defense counsel, defendant's alibi was so unbelievable it demonstrated defendant had not premeditated or deliberated the killing:

> Well, Ian Campbell -- and I'll give you the litany in a minute -- the

3

evidence is going to show that what he constructed to avoid getting caught and avoid getting detected and to avoid responsibility for what he had done will be, we're convinced, in your opinion, the most pathetic, miserable construct of an alibi in the history of criminal law.

Counsel then explained defendant's alibi that Domenie had "gone and choked herself with a tea towel" while he was running an errand, and told the jury that as it considered the evidence in the case they should "keep in mind how miserable it is, and pathetic, and consider that when you're deciding whether this thing was premeditated and deliberated upon, whether this killing was thought out in advance and planned."

Next, defense counsel previewed the evidence showing defendant lied to the first responders, to the police, and to his brother. Defendant kept telling the same lie, and he was "lying to everybody. Everybody. Well, it goes on for months, months and months." "Everybody" included his attorneys. Five weeks before the trial started, however, defendant broke down "under enormous pressure from his family and from his lawyers and everybody else that cares anything about him," and finally "[told] us what he did and what happened." The "pathetic" lie defendant kept telling pertained to whether defendant had the mental state for first degree murder:

> And you'll be able to judge his credibility and make a decision about whether you think that this was all the work of a planning, determined, master-mind or someone who was covering for something that -- something terrible had happened to him and the pathetic efforts he made to cover it up. That will be your decision.
>
> And based on your determination of that will be a lead-in into your consideration of what offense of homicide Ian Campbell's guilty of.

According to the defense theory, defendant's "pathetic" lie indicated his killing of Domenie was not premeditated or deliberated, and therefore defendant was guilty of a lesser crime than first degree murder.

During the trial, defendant testified in his own defense. During direct examination, defendant admitted he had repeatedly lied:

Q: Well, Ian, can you tell the Court and jury how you began to and why you began to pursue the matter of the correspondence and discussions with the life insurance company about Heather's policy?

4

A: I was telling everybody the same lie, and my family and lawyers and people around me were believing me, . . . .

On cross examination, defendant again admitted lying to his attorneys:

Q: You lied to all the folks from the Cary Police Department that you have talked to, right?

A: Yes, sir, I lied to everybody that night and every time after that fact that I was questioned about that event.

Q: Okay.

A: I lied to my family, my lawyers and everybody.

In his closing argument, defense counsel returned to the theme of defendant's implausible lie. Counsel argued:

> And while we're talking about that and your determination of whether this was a premeditated and deliberated killing with motive, consider this, from a guy who is supposed to be smart and a planner and all that: If you were going to do something and plan on doing it very carefully, all the way back to buying insurance and everything else, why in the world would you put yourself in the house with your intended victim, screen every call that came in, admit no one to the house and then set yourself up as the only possible suspect? And then after all that careful planning and execution of this careful plan to eliminate this person in a premeditated and a deliberate way, then the best you could do after thinking on it all the way back to June with Ron Keever and everything else, come up with that 9-1-1 call. And the --I think we've just used the word before -- pathetic explanation for what happened and the persistence afterwards, all the way up to almost the beginning of the trial, in denying that you had anything to do with this or trying to create evidence to show that you just couldn't have done it, if it was so well planned.

> Counsel summarized this theme: "If it had been premeditated, don't you know the story would have been better?"

*State v. Campbell*, 177 N.C. App. at 521-25.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Campbell's claim is governed by 28 U.S.C. § 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104, 132, 110 Stat. 1214 (1996). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Additionally, there is no requirement the state court specifically cite United States Supreme Court cases as long

as the ultimate decision is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See Bell v. Jarvis*, 236 F.3d 149, 157-158 (4th Cir. 2000); *see also Thomas v. Taylor*, 170 F.3d 466, 475 (4th Cir. 1999); *see also Weeks v. Angelone*, 176 F.3d 249, 259 (4th Cir. 1999).

Only after a petitioner establishes that the state court's adjudication of his claims was "contrary to," or an "unreasonable application of" clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence, may a federal court proceed to review a state court judgment independently to determine whether habeas relief is warranted. *Rose v. Lee*, 252 F.3d 676, 690 (4th Cir. 2001). If the state court did not articulate the rationale underlying its adjudication, a federal habeas court must examine the record and the clearly established Supreme Court precedent to determine whether the state court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law. *Bell*, 236 F.3d at 158. If, however, the state court failed to adjudicate a properly presented claim, the federal court must review questions of law and mixed questions of law and fact *de novo*. *Fisher v. Lee*, 215 F.3d 438, 445 (4th Cir. 2000) (quoting *Weeks*, 176 F.3d at 258). Finally, the factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Id.*

B. Campbell's Claim

One issue is raised in this court: Disclosure by trial counsel of confidential communications in which petitioner, Ian Campbell, repeatedly lied to his attorneys was ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

"It is a well-settled principle of law that confidential conversations between a defendant and his counsel generally are protected by the attorney-client privilege, which affords the communications 'complete protection from disclosure.'" *United States v. Lentz*, 524 F.3d 501, 523 (4th Cir. 2008) (quoting *In re Grand Jury Subpoena*, 341 F.3d 331, 334 (4th Cir. 2003)). The privilege "is a creation of the common law, not the Constitution." *Smith v. Moore*, 137 F.3d 808, 819 (4th Cir. 1998) (quoting *Lange v. Young*, 869 F.2d 1008, 1012 n.2 (7th Cir. 1989)). "Federal habeas review is limited to 'violations of the United States Constitution or its law and treaties.'" *Smith*, 137 F.3d at 819 (quoting *Cooper v. Taylor*, 103 F.3d 366, 370 (4th Cir. 1996)). As such, "a mere violation of . . [the] attorney-client privilege would not warrant habeas relief." *Smith*, 137 F.3d at 819 (citing *Lange*, 869 F.2d at 1012 n.2 (noting that "[e]ven if a violation of the attorney-client privilege occurred this violation alone would be insufficient grounds for [habeas] relief")). Thus, one is only entitled to habeas relief if, as a result of the breach of the privilege, the Sixth Amendment is violated based on ineffective assistance of counsel. See *Smith*, 137 F.3d at 819 - 820.

That said, the issue of whether there was a breach of the privilege is essential to the determination of this petition. If there were no breach, there is no need to look at the ineffective assistance issue, and the matter is concluded. If a breach did occur, then the court must inquire, whether counsel's performance deficient, and if so, was the deficiency prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Under North Carolina procedural rules, a direct appeal is limited to a review solely upon the record on appeal and the transcripts of the proceedings. N.C. R. App. P. 9(a). A review of the transcript and record before the North Carolina Court of Appeals affirms the appeal was in

8

compliance with Rule 9(a). At issue here is a question of whether the trial attorney violated the petitioner's privileged communications with counsel prior to trial. It is clear from the record that any privilege prior to trial was waived by the petitioner as a part of the trial strategy.

Before the court is a declaration presented to the trial court on the first day of trial which is central to the issue. The declaration outlines the defense's strategy. The declaration sets out a clear and apparent waiver of the attorney-client privilege. The declaration establishes the understanding between petitioner and counsel that the defense would concede certain inculpatory facts to present a defense acknowledging some wrong-doing, but not premeditation and deliberation. Accordingly, petitioner is unable to show that the state court decision was contrary to clearly established federal law.

## CONCLUSION

For the reasons stated above, respondents' motion for summary judgment is ALLOWED. SO ORDERED. This the _16_ day of September 2008.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE